THE TRUSTEES OF THE PRESBYTERIAN CHURCH OF
TRENTON v. THE STATE BOARD OF COMMISSIONERS
OF ELECTRICAL SUBWAYS AND THE TRENTON PAS-
SENGER RAILWAY COMPANY (CONSOLIDATED).

1. The act entitled "An act for the placing of electrical conductors under
   ground in cities of this state, and for the creation of a state board of
   commissioners of electrical subways," approved March 10th, 1892
   (*Pamph. L., p.* 78), does not authorize the board to grant a franchise
   for erecting poles and wires in the streets for the transmission of elec-
   tricity. The office and effect of that legislation relate to the control
   and regulation of such franchises derived from other competent
   authority.
2. A resolution of the board, giving consent to the erection of poles and
   wires above ground will relieve the company to which such consent is
   given from the interdict contained in the fifth section of the act.
   Whether acts done by the company, under color of such a resolution,
   are an invasion of public or private rights will depend upon the ques-
   tion whether such acts were lawful, independent of the consent of the
   board.

On *certiorari* to review a resolution of the state board of
commissioners of electrical subways.

Argued at February Term, 1893, before Justices DEPUE
and LIPPINCOTT.

For the plaintiff in *certiorari, William S. Gummere.*

*Contra, Chauncy H. Beasley* and *James Buchanan.*

The opinion of the court was delivered by

DEPUE, J.    The Trenton Passenger Railway Company
(Consolidated) was formed by the consolidation of the several
horse railroad and street railway companies incorporated under
the laws of this state, to wit, the Trenton Horse Railroad
Company, the City Railway Company, the Hamilton Street
Railway Company and the South Clinton Avenue and Broad
Street Railway Companies, by an agreement and act of con-

solidation dated September 21st, 1891, and filed in the office of the secretary of state of New Jersey on September 30th, 1891.

The Trenton Horse Railroad Company was incorporated by an act passed March 9th, 1859. *Pamph. L., p.* 266. By an ordinance approved January 1st, 1891, the common council of the city of Trenton, assuming to act under an act of the legislature approved March 6th, 1886, empowering street railway companies to use electric or chemical motors or grip cables as the propelling power of their cars, by the consent of the municipal authorities (*Rev. Sup., p.* 369), adopted an ordinance granting to the company permission to use electric motors as the propelling power of its cars on all the lines in the city, to be supplied with electricity from overhead wires supported by poles, to be located under the supervision and direction of the city surveyor and the committee on railroads of the common council. On *certiorari* to test the validity of this ordinance this court decided that the act of the legislature under which the ordinance purported to have been passed did not authorize the erection of poles and the stretching of wires in a public street, and that the ordinance then in question was illegal. *Green* v. *Trenton,* 25 *Vroom* 92.

Subsequently, on the 2d day of August, 1892, the Trenton Passenger Railway Company (Consolidated) applied to the state board of commissioners of electrical subways for a grant of the privilege to construct and maintain electric wires along, across and above certain of the streets of the said city, and on the same day the state board of commissioners of electrical subways adopted the following resolution :

"*Resolved,* That the permission of this board be and the same is hereby given to the ' Trenton Passenger Railway Company' to construct and maintain electric wires through East State street, in the city of Trenton, from the corner of Broad and State streets to Chambers street ; said wires to be suspended not less than twenty feet above the surface of said street, and to be used only for the purpose of operating the railway of said company, and to be constructed and main-

tained in conformity with the petition and map filed with this board by said company."

The prosecutors are the owners of a lot of land fronting on State street, a street through which the company is operating a street railway. The company, acting under the above resolution, have located and placed two poles within the curb line of the street, in front of and upon the premises of the prosecutors. The object of this writ is to test the validity of the said resolution of the board.

The board of commissioners of electrical subways was created by an act approved March 10th, 1892, entitled "An act for the placing of electrical conductors under ground in cities of this state, and for the creation of a state board of commissioners of electrical subways." *Pamph. L., p.* 78.

The proposition discussed by counsel was whether the act of 1892 conferred upon the board of commissioners power to make a grant of the franchise of the right to erect poles and wires in the street. The contention of the counsel of the prosecutors was that the act in question did not authorize the board to grant a franchise, and that the office and effect of that legislation relate to the control and regulation of such franchises derived from other competent authority. In this construction of the act we concur.

The object expressed in the title of the act is " the placing of electrical conductors under ground." Under this title it would not be competent for the legislature to empower the commissioners to grant the franchise of erecting in the streets poles and wires for the transmission of electricity. Nor does the enacting part of the act purport to clothe the commissioners with any such power. By the second section it is made the duty of the board to examine the manner in which wires and cables for the transmission of electricity are constructed and used in the cities of this state; and whenever, in their judgment, the public welfare will be advanced by the removal of any wires or of the poles used for the support of electric wires from the surface of the street, to order such poles and wires to be removed from the surface of the street and

placed under the streets. And if the owner of such poles or wires shall not, on notice, remove them, within a specified time, it is made the duty of the commissioners to remove such poles or wires from the streets without delay. This section also declares it to be the duty of the commissioners, whenever they determine that the public welfare will be advanced by the removal of such poles and wires from the surface of the street, to cause such electrical conductors or wires as thereafter shall be used in such city to be placed under ground, whenever, in their judgment, it is practicable so to do. Other parts of the act authorize the construction of electrical subways and underground conduits, on plans to be approved by the commissioners, within which the wires or cables used for the transmission of electricity shall be placed.

Nowhere in the act is there an indication of a legislative intent to confer on this board power to make a grant of a franchise which shall operate, *proprio vigore*, to legalize the erection of poles on which electrical wires shall be suspended. The functions of the board of commissioners are simply supervisory, by way of control over the exercise of franchises derived from other legislative authorities to use in the street of a city wires and cable for the transmission of electricity. Under our construction of the resolution under review it does not purport to grant to the railroad company the franchise of erecting poles in the streets.

The fifth section of the act provides that no telegraph, telephone, electric light or other electric wire or cable shall thereafter be constructed along, across or above the surface of any street or avenue in any city in this state until the board shall authorize such wires to be carried along, across or above the surface of such streets or avenues. This section is simply prohibitory. It does not purport to grant or to empower the commissioners to grant the franchise of erecting poles or wires above the surface of the street. It prohibits such erections without the consent of the commissioners, notwithstanding the person or corporation to whom such consent is given may have the franchise to make use of the streets for that purpose.

In this sense the subject-matter of this section is germane to the object expressed in the title of the act, and is relevant to the purpose for which this commission was established—the inhibition of poles and wires above the surface of the streets whenever public welfare will be advanced by placing the same under ground.

The claim of the railroad company which probably induced the board to pass this resolution is, that the company has the franchise to propel its cars by electricity, in virtue of section 11 of the charter of the Trenton Horse Railroad Company, and as incident thereto, has the right to erect poles and wires in the streets. However groundless this claim may be, the commissioners were not called upon to decide upon its sufficiency, and any decision the commissioners might make on that subject would not avail the company in any proceeding against it for an invasion of the rights of the public or of private individuals arising from an unlawful use of the streets. The resolution under review was an appropriate method of expressing the consent of the board to the erection of poles and wires above ground, in conformity with the fifth section of the act, and will operate to relieve the company from the interdict contained in that section. It can have no other effect. Whether acts done by the company, under color of this resolution, are an invasion of public or private rights will depend upon the question whether such acts were lawful, independent of the resolution of the board, and that question is not before us.

The resolution is sustained.